IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALISHA CHRISTINE BURR, | ) | Case No. 1:25-cv-01072-RJS |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANK BISIGNANO, | ) | **AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## I.     Introduction

Plaintiff, Alisha Christine Burr ("Burr"), seeks judicial review of the final decision of the

Commissioner of Social Security denying her application for supplemental security income

("SSI") under Title XVI of the Social Security Act. Burr raises three issues on review of the

Administrative Law Judge's ("ALJ") decision, arguing:

1.     The ALJ erred when he failed to support and/or address consistency with his conclusions regarding the opinions of the treating and examining sources.

2.     The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms.

3.     The ALJ erred at Step Three of the Sequential Evaluation when he failed to find that Plaintiff satisfied the criteria of Listings 12.04, 12.06 and/or 12.15.

(ECF Doc. 8, p. 1). This matter is before me pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).

The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. §

636(c)(1). As substantial evidence supports the ALJ's decision and because Burr has failed to

identify any error of law in the ALJ's evaluation of her case, the Commissioner's final decision

is AFFIRMED.

1

**II.      Procedural History**

On March 27, 2023, Burr filed an application for SSI alleging her disability began on

April 28, 2013. (Tr. 165). The claims were denied initially and on reconsideration. (Tr. 89, 102).

On December 22, 2023, Burr requested a hearing before an ALJ. (Tr. 119). Burr, with

representation, and a Vocational Expert ("VE") testified before an ALJ on April 30, 2024. (Tr.

36-56).

On May 29, 2024, the ALJ issued a written decision finding Burr not disabled. (Tr. 14-

31). The Appeals Council denied her request for review on April 2, 2025, thereby rendering the

ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Burr timely instituted this

action on May 27, 2025. (ECF Doc. 1).

**III.     Evidence**

**A.  Personal, Educational and Vocational Evidence.**

Burr was born on October 2, 1982, and was 40 years old on the date the application was

filed. (Tr. 165). She has at least a high school education. (Tr. 30). She has past relevant work as a

fast-food worker, DOT 311.472-010, SVP 2, light exertional level, and as a janitor, DOT

382.664-010, SVP 3, medium exertional level. (Tr. 29).

**B.  Relevant Medical Evidence**

On January 20, 2020, Burr attended a consultative examination with Paul G. Josell,

Psy.D., claiming disability due to diabetes mellitus, hypertension, post-traumatic stress disorder

("PTSD"), depression, and agoraphobia. (Tr. 284-87). She was single with no children and was

residing with her mother. (Tr. 284). She was a high school graduate and was enrolled in college.

(*Id.*). She claimed PTSD arising from childhood and adult traumas including "systematic

molestation" by a co-worker as a teen, date rape, abuse by her mother, and the loss of most of her belongings when the home she was living in was destroyed by a wildfire. (Tr. 285). Her anxiety and PTSD symptoms are triggered by the smell of smoke and fire alarms. (*Id.*). She displayed features consistent with borderline personality disorder, including poor self-esteem, unstable self-image and instability in interpersonal relationships. (*Id.*). She complained of symptoms including low energy, hopelessness, helplessness, cutting, and suicidal ideations with a history of at least 12 suicide attempts. (*Id.*). She had been engaged in therapy and taken psychiatric medications in the past but was currently unable to afford either. (*Id.*). Dr. Josell diagnosed her with persistent depressive disorder, other specified anxiety disorder, and borderline personality disorder. (Tr. 287).

At an appointment with Elizabeth Looney, M.D., Burr indicated that she was unable to work due to mental health issues. (Tr. 572). She reported that when she has worked, she "feels exhausted to the point of suicide." (*Id.*).  Burr stated she had a history of cutting and 15 suicide attempts, and that she had tried five different anti-depressants without benefit. (*Id.*).

Since her filing date of March 27, 2023, Burr has consistently been engaged in counseling to treat her diagnoses of dysthymic disorder, agoraphobia, persistent depressive disorder, generalized anxiety disorder, social anxiety disorder, and PTSD. (Tr. 289-322, 605-700, 711-823). Her reported symptoms typically included sadness, nervousness/anxiousness, intrusive thoughts, and changes in appetite. (*See e.g.*, Tr. 323). At an assessment of her mental health on May 4, 2023, Burr expressed that she was always low, and that she had "enough anxiety for ten people." (Tr. 302). She was prescribed gabapentin and Xanax and was tapered off of viibryd. (*Id.*).  She attended several psychiatric medication management appointments between

3

November 15, 2023 and March 7, 2024 where she indicated her medications were helping to manage her anxiety symptoms and improve her sleep. (Tr. 743, 780, 815).

**Medical Opinion Evidence**

### i. State Agency Reviewers

On July 15, 2023, state agency reviewing physician Steve McKee, M.D., opined that Burr was limited to the performance of work at the medium exertional level with no additional restrictions. (Tr. 85-86). On November 16, 2023, state agency reviewing physician James Greco, M.D. agreed that Burr was limited to the medium exertional level, but found she was further restricted to frequent climbing of ladders ropes and scaffolds, and frequent stooping, kneeling, crouching, and crawling. (Tr. 98-99).

On July 19, 2023, state agency reviewing psychologist Sheri Tomak determined that Burr had moderate limitations in the domains of interacting with others and concentrating, persisting and maintaining pace, and mild limitations in the domain of adapting and managing oneself. (Tr. 82). Tomak opined that Burr was moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to interact appropriately with the general public; in her ability to accept instructions and respond appropriately to criticism from supervisors; and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 86). State agency reviewing psychologist Ann Lovko, Ph.D., affirmed Tomak's opinion on October 25, 2023. (Tr. 96).

### ii.  Consultative Examiner

On January 20, 2020, Dr. Josell opined that Burr's ability to relate to others appears impaired to the extent she gets anxious or agitated around others. (Tr. 287). Her ability to concentrate, persist, and maintain pace appeared variably impaired as she seems generally capable of adequate focus, but she can get distracted when she is overly stressed and anxious, rendering her less functional in completing tasks. (*Id.*). Her ability to adapt and manage herself is also limited by mood and anxiety, and she is affected by her own belief that she is incapable of working. (*Id.*)

### iii.  Medical Source Statement

On August 30, 2022, Eileen Zehe, APN, completed a medical questionnaire concerning Burr. (Tr. 602-03). APN Zehe indicated that Burr had diagnoses of bipolar II disorder, PTSD, dysthymic disorder, social anxiety, agoraphobia, persistent depressive disorder, and generalized anxiety disorder, and that she was treating with alprazolam and gabapentin. (Tr. 602). APN Zehe opined that Burr was limited in her ability leave home, and that she was unable to meet competitive standards in performing activities within a schedule; in managing regular attendance and being punctual within customary tolerances; in working in coordination with or in proximity to others without being distracted by them; in completing a normal workday and workweek without interruptions from psychologically based symptoms; in performing at a reasonable pace without an unreasonable number and length of rest periods; and in interacting appropriately with the general public. (Tr. 602-03). Per APN Zehe, Burr was seriously limited, but not precluded in remembering locations and work-like procedures; in understanding and remembering very short simple instructions and detailed instructions; in getting along with coworkers or peers without distracting them or exhibiting behavior extremes; and in responding appropriately to changes in

the work setting. (Tr. 603). Burr was likely to be absent up to several days per week, and off-task more than 50% of the time. (*Id.*).

### D. Administrative Hearing Evidence

On April 30, 2024, Burr testified before the ALJ that she was unemployed, having worked most recently in 2018. (Tr. 42). She stated that her main health issues were anxiety and PTSD. (Tr. 44). Burr testified that she takes medication to treat her mental health and had been seeing a therapist for approximately two years. (Tr. 45). While therapy and medication have been helpful, she does suffer from side effects including diarrhea and fatigue. (*Id.*). She has occasional short-term memory loss and has difficulty with concentration and getting along with others. (Tr. 46). She spends most of her time either on the internet, watching television, or playing video games. (*Id.*). Burr testified that she cannot go out in public alone, and usually her case manager will accompany her when she leaves home. (Tr. 47).

Under questioning by her attorney, Burr testified that when she leaves home she has panic attacks, even if she only goes outside to take out the garbage. (Tr. 48). The panic attack will usually last until she is able to return to a safe place. (Tr. 49). She further testified that when doing activities such as reading or playing video games for extended periods of time, she will struggle to maintain focus, and that the maximum time for her to sustain concentration is about 20 to 30 minutes. (Tr. 49-50).

Once Burr had completed her testimony, VE Laura Pizzurro testified. (Tr. 50-55). The VE opined that Burr's past work included fast foods worker, DOT 311.472-010, SVP 2, generally performed at the light exertional level, and janitor DOT 382.664-010, SVP 3, both generally and actually performed at the medium exertional level. (Tr. 51). For his first

hypothetical, the ALJ asked the VE to consider an individual of Burr's age and education, with past work indicated, who is limited to the full range of medium work, with the additional limitations that the individual is limited to frequent climbing of ladders, ropes, and scaffolds; frequent stooping, kneeling, crouching, and crawling; is able to perform simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work; and limited to occasional interactions with supervisors, and brief and superficial interactions with coworkers and the general public, with superficial defined as doing no task involving arbitration, negotiation, confrontation, correcting the work of others, persuading others, or being responsible for the safety or welfare of others. (Tr. 51-52). The VE opined that the individual could perform Burr's past work as a fast food worker, and could also work as a cleaner II, DOT 919.687-014, SVP 1, medium, with approximately 15,000 jobs in the national economy; as a cleaner, DOT 922.687-058, SVP 2, medium, with approximately 40,000 jobs in the national economy; and as an industrial cleaner, DOT 381.687-018, SVP 2, medium, with approximately 198,000 jobs in the national economy. (Tr. 52-53).

For his second hypothetical, the ALJ asked the VE to consider all of the same circumstances of the first hypothetical, with the additional limitations that the individual would be off task more than 15% of the time, and would be absent from work two days per month or more. (Tr. 53). The VE opined that those limitations would be work preclusive. (*Id.*). For his third hypothetical the ALJ asked the VE to again consider all of the same circumstances of the first hypothetical, except that this individual would be limited to work at the light exertional level. (*Id.*). The VE opined that this individual could also perform Burr's prior work as a fast food worker, and could also work as a marker, DOT 209.587-034, SVP 2, light, with approximately 15,000 jobs in the national economy; as a cleaner, DOT 323.687-014, SVP 2,

light, with approximately 60,000 jobs in the national economy; and as an order caller, DOT

209.667-014, SVP 2, light, with approximately 9,000 jobs in the national economy. (Tr. 53-54).

Burr's attorney next inquired whether the individual from the ALJ's first hypothetical

would be able to work on a full-time competitive basis if they were further limited by an inability

to work outside of the home. (Tr. 54). The VE opined that there would be no work available for

that individual. (Tr. 55).

**IV.**     **The ALJ's Decision**

In his decision dated October 19, 2023, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since March 27, 2023, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: diabetes mellitus; obesity; depression; borderline personality disorder; anxiety disorder; and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: frequently climb ladders, ropes and scaffolds; frequently stoop, kneel, crouch, and crawl; able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work); and limited to occasional interaction with supervisors and brief and superficial interaction with coworkers and the public.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on October 2, 1982, and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 27, 2023, the date the application was filed (20 CFR 416.920(g)).

(Tr. 20-31).

**V.      Law and Analysis**

   **A.  Standard for Disability**

   Social Security regulations outline a five-step process the ALJ must use to determine

whether a claimant is entitled to benefits:

   1.      whether the claimant is engaged in substantial gainful activity;

   2.      if not, whether the claimant has a severe impairment or combination of impairments;

   3.      if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

   4.      if not, whether the claimant can perform their past relevant work in light of his RFC; and

   5.      if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th

Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.*  Generally, these regulations are duplicates and establish the same analytical framework.  For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Standard of Review

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error

prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.      Discussion

Burr raises three issues for this Court's review:

1. Did the ALJ err by failing to support and/or address consistency with his conclusions regarding the opinions of the treating and examining sources?

2. Did the ALJ erroneously fail to comply with Social Security Ruling ("SSR") 16-3p when evaluating the totality of Burr's symptoms?

3. Did the ALJ err at Step Three of the Sequential Evaluation by failing to find that Burr satisfied the criteria of Listings 12.04, 12.06 and/or 12.15?

(ECF Doc. 8, p.1).

### a.  The ALJ properly evaluated the opinions of the treating and examining sources and substantial evidence supports the ALJ's conclusions.

Burr argues that despite finding the opinion of the consultative examiner, Dr. Josell, to be partially persuasive and supported by the evidence the ALJ failed to include any limitations in the RFC that related to Dr. Josell's findings. (*Id.* at p. 9). Specifically, Burr takes issue with the ALJ's perceived failure to provide support for the omission of a limitation "regarding the fact that Plaintiff would have difficulty in her ability to maintain attention and concentration along

11

with diminished tolerance for frustration and coping skills." (*Id.*). Further, Burr contends that the ALJ failed to sufficiently address that supportability and consistency of Dr. Josell's opinion. (*Id.* at p. 10).

As to the opinion of her treating provider APN Zehe, Burr asserts the ALJ erred in finding it unpersuasive because she "failed to provide a narrative explanation and the limitations were not consistent with the medical evidence." (*Id.*). Burr argues that the ALJ incorrectly found her symptoms were related to stressors in her life, and therefore stable when she was able to manage her stress. (*Id.*). Burr suggests the ALJ's conclusions were inconsistent with the medical evidence, "and were neither supported by nor consistent with the medical documentation in this matter." (*Id.* at p. 11).

Regarding Dr. Josell's opinion, the Commissioner responds that the ALJ properly accounted for the suggested limitations, despite the opinion being "vague and equivocal." (ECF Doc. 10, at p. 7). The Commissioner further argues that Burr only summarily claimed that the ALJ failed to address the supportability and consistency of the Dr. Josell without providing support for that supposition, and therefore effectively waived the argument. (*Id.* at p. 8).

As to APN Zehe's opinion, the Commissioner claims the ALJ was correct in finding it unpersuasive due to it being set out in check box form, and notes inconsistency between the checked boxes and APN Zehe's suggestion that her opinion was supported by a diagnosis of agoraphobia. (*Id.* at p. 9). The Commissioner contends that there is substantial evidence supporting the ALJ's finding that APN Zehe's opinion is inconsistent with the record, and therefore unpersuasive. (*Id.* at pp. 10-11).

The evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. This regulation mandates that the ALJ "will not defer or give any evidentiary weight, including

controlling weight to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Rather, the ALJ

must evaluate each medical opinion's persuasiveness based on its: (1) supportability; (2)

consistency; (3) relationship with the plaintiff; (4) specialization; and, (5) "other factors that tend

to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R.

§ 404.1520c(c); *see also Heather B. v. Comm'r of Soc. Sec.,* No. 3:20-cv-442,2022 WL 3445856

(S.D. Ohio Aug. 17, 2022). Supportability and consistency are the most important factors; ALJs

must "explain how [they] considered the supportability and consistency factors for a medical

source's medical opinions or prior administrative findings in [their] determination or decision."

20 C.F.R. § 404.1520c(b)(2). ALJs "may, but are not required to," consider factors three through

five when evaluating medical source opinions. (*Id.*).

   For supportability, "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) . . . the

more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency,

"[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources

and non-medical sources in the claim, the more persuasive the medical opinion(s) . . . . 20 C.F.R.

§ 404.1520c(c)(2).

   An ALJ must "provide a coherent explanation of his [or her] reasoning. *Lester v. Saul*,

No. 5:20-cv-01364, 20 WL 8093313 at *14 (N.D. Ohio Dec. 11, 2020), *report and

recommendation adopted sub nom.*, *Lester v. Comm'r of Soc. Sec.,* No. 5:20-cv-01364. 2021 WL

119287 (N.D. Ohio, Jan. 13, 2021). The ALJ's medical source opinion evaluation must contain a

"minimum level of articulation" to "provide sufficient rationale for a reviewing adjudicator or

court." *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 2017 WL 168819, 82

Fed. Reg. 5844, 5858 (Jan. 18, 2017). If an ALJ does not "meet these minimum levels of

articulation," it "frustrates this [C]ourt's ability to determine whether her disability determination was supported by substantial evidence." *Heather B.*, at *3, *citing Warren I. v. Comm'r of Soc. Sec.,* No. 5:20-cv-495, 2021 WL 860506, at *8 (N.D. N.Y., Mar. 8, 2021).

An ALJ is not required to adopt all of the limitations suggested in prior administrative medical findings or medical opinions, even if the ALJ has found the prior administrative medical findings or opinions to be persuasive. *See generally,* 20 C.F.R. §§ 404.1520c; 416.920c. The ALJ – while not a physician – is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c); *Pitrman v. Comm'r of Soc. Sec.*, No. 3:15-cv-1503, 2023 WL 3510752, *13 (N.D. Ohio April 10, 2023). When assessing a claimant's RFC, an ALJ "is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding . . . [and] and ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Even where an ALJ finds an opinion fully persuasive, "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Furthermore, an ALJ is not obligated to explain each limitation or restriction adopted or not adopted. *Pitrman*, 2023 WL 3510752, at *14. "The ALJ is not required to describe the claimant's limitation using the exact language of those medical sources as long as substantial evidence demonstrates that the ALJ adequately portrayed the claimant's limitations in the RFC." *Aerial T. v. Comm'r of Soc. Sec.*, No. 2:23-cv-04188, 2025 WL 798367, at *3 (S.D. Ohio Mar. 13, 2025).

In assessing Dr. Josell's opinion, the ALJ determined it to be partially persuasive. (Tr. 28). The ALJ assessed the supportability of the opinion, noting that it resulted from a one-time evaluation that took place four and a half years prior to the date of the decision, with no long-term treating relationship established and nothing in the opinion to suggest that the same limitations would apply several years into the future. (*Id.*). Further, the ALJ considered the consistency of the opinion with the record as a whole, noting that the opinion is "generally consistent" with the medical evidence, and that Burr has struggled with "tolerating life stressors" and how life stressors have increased her anxiety symptoms, referencing several exhibits contained within the record. (*Id.*). By specifically addressing supportability and consistency, the ALJ met his burden of articulation regarding the persuasiveness of Dr. Josell's opinion. Further, he was under no obligation to parrot the limitations suggested by Dr. Josell's opinion, and although Burr claims there was no limitation addressing her "difficulty in her ability to maintain attention and concentration along with diminished tolerance for frustration and coping skills," the RFC included a limitation to the performance of simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). (Tr. 24). Accordingly, there is no error relative to the ALJ's assessment of this opinion.

As to APN Zehe, the Commissioner is correct in arguing in support of the ALJ's determination that the persuasiveness of the opinion is diminished by its checkbox format. The Sixth Circuit has held that a checkbox opinion without explanation is "patently deficient." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x. 468, 475 (6th Cir. 2016). Further, the ALJ assessed the supportability of the opinion, noting minimal social interaction limitations on the checkbox form, while also noting her diagnosis of agoraphobia and the statement that Burr has a "limited ability to leave the house." (Tr. 28, 602-03). Without further explanation, the ALJ

15

determined he was unable to find support for the limitations checked and therefore was unpersuaded. (Tr. 28).

The ALJ also addressed APN Zehe's opinion's lack of consistency with the record, writing:

> [T]hese limitations are not consistent with the medical evidence. The record shows that the claimant's symptoms are largely related to stressors in their life. (B5F; B8F; B9F). When the claimant was able to manage the stressors in their life, their mental health symptoms were stable (B5F; B8F; B9F). The evidence also shows that the claimant's mental health symptoms were somewhat stable even when they were struggling dealing with life stressors (B8F; B9F). Furthermore, there is no evidence that the claimant was completely unable to work. Review of the claimant's counselling records show that the claimant was able to travel to a concert out of state with a friend, organize a memorial event, and take care of their mother (B5F; B9F). The memorial event required the claimant cut 3,000 pieces of paper and work with the organizer to accomplish other tasks (B9F). This does not support the conclusion that the claimant would be off-task more than 50% of the day. Therefore, the undersigned is not persuaded by this opinion.

(Tr. 28-29). As the ALJ properly addressed the supportability and consistency of APN Zehe's opinion in determining it was unpersuasive there is substantial evidence undergirding his evaluation. Accordingly, this issue does not countenance remand.

> **b. The ALJ complied with SSR-16-3p when assessing Burr's subjective complaints and his determination that Burr's allegations were not entirely consistent with the record is supported by substantial evidence.**

Burr next argues that the ALJ did not consider her subjective complaints regarding her symptoms in a manner consistent with SSR 16-3p. (ECF Doc. 8, pp. 12-16). Burr avers that the ALJ was incorrect in finding that her conditions stabilized with medications and were therefore less restrictive than reported. (*Id.* at p. 14). Rather, in Burr's view, the evidence shows the difficulties she was having due to her symptoms, most notably relating to agoraphobia, and that she was precluded from sustained work activity. (*Id.* at p. 15). Burr contends the ALJ did not

16

articulate "any supportable rationale for his finding that Plaintiff's statements . . . were not supported by the evidence," and accordingly committed error. (*Id.* at pp.15-16).

In response, the Commissioner notes that the ALJ determined that Burr's subjective allegations were not entirely consistent with the medical evidence. (ECF Doc. 10, p. 12). The Commissioner disputes Burr's contention that her allegations were consistent with the medical evidence, noting that all of Burr's references to the record intending to show consistency were just other references to Burr's subjective complaints, as opposed to objective findings that might be more probative of functional limitations. (*Id.*). By contrast, the ALJ cites to objective evidence that is incongruous with Burr's subjective complaints. (*Id.*). Further, the Commissioner asserts, the ALJ applied additional factors when applying SSR 16-3p, including Burr's activities, her treatment, and the impact of her medications. (*Id.* at p. 13). For these, reasons, the Commissioner argues, the ALJ properly evaluated Burr's subjective complaints and substantial evidence supports the conclusion that the allegations were not consistent with the record. (*Id.* at p. 14).

When assessing a claimant's subjective statements, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 825 (6th Cir. 2019); SSR 16-3p. The ALJ answered this question affirmatively. Next, the ALJ must consider the objective medical evidence and the claimant's reported daily activities, as well as several other factors, to evaluate the intensity, persistence, and functional limitations of the claimant's symptoms. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p.

In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. Beyond medical evidence, there are seven factors that the ALJ should consider. These factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p.

The ALJ is not required to discuss each of these factors or even all the evidence in the record but need only acknowledge the factors and discuss the evidence that supports their decision. *See Bryson v. Comm'r of Soc. Sec.*, 2021 WL 2735993 at * 14 (N.D. Ohio June 10, 2021), adopted by, 2021 WL 2720071 (N.D. Ohio July 1, 2021). However, "[i]n evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id. ;see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th

18

Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

An ALJ is not required to accept the claimant's complaints at face value but may discount them based on his consideration of the above factors. *See Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x. 113, 119 (6th Cir. 2016); *Bryson*, 2021 WL 2735993 at * 15. In light of the ALJ's opportunity to observe the claimant's demeanor, the ALJ's evaluation of a claimant's subjective symptoms is entitled to considerable deference and should not be discarded lightly. *See Dooley*, 656 Fed. App'x. at 119 ("[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'") quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). Indeed, a reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 788 (6th Cir. 2017) (noting that "while an ALJ's credibility determinations must be supported by substantial evidence, we accord them special deference"); *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (noting that, "in practice ALJ credibility findings have become essentially 'unchallengeable.' "); *Riebe v. Comm'r of Soc. Sec.*, 2019 WL 4600628 at * 7-8 (N.D. Ohio Sept. 23, 2019) (same).

After finding that Burr had underlying medically determinable mental and physical impairments that could reasonably be expected to produce her symptoms, the ALJ proceeded to step two of the analysis. As required, the ALJ considered the medical evidence, Burr's statements, and any other additional relevant evidence, in order to determine how her symptoms limited her capacity for work. Specifically, the ALJ considered Burr's daily activities, noting that her Adult Function Report indicated she spent her time watching television, playing video

19

games, and listening to music; that Burr was able to interact with others mostly by social media and text message; that she had discussed attending out of state concerts with a friend; that she prepared her own meals, but struggled with household chores and shopping; that she was capable of managing her own finances; that she was capable of caring for her mother; and that she was able to help organize a charitable activity. (Tr. 22-29). The ALJ also considered factors that aggravated Burr's symptoms, such as news reports about wildfires (Tr. 26); the type, dosage, effectiveness, and side effects of medications, which at times helped manage her anxiety, depression, and PTSD symptoms, and at times aggravated them (Tr. 26-28); and other treatment she received, including counselling that was consistent throughout the period in question. (Tr. 27-28). This thorough review of the factors delineated in SSR 16-3p satisfied the ALJ's burden, and accordingly, the ALJ's decision is affirmed with regard to this issue.

      **c.  The ALJ did not err in determining that Burr did not meet a listing.**

Finally, Burr contends that she had severe psychological impairments, including depression, borderline personality disorder, anxiety, and PTSD, that should have led to a finding that she met one of Listings 12.04, 12.06 and/or 12.15. (ECF Doc. 8, pp. 16-21). Burr argues that the finding that she had no more than moderate limitations in any of the functional domains was contrary to the evidence that she believes shows her to have marked limitations in the domains of social interactions and concentration, persistence, and maintaining pace. (*Id.* at pp. 17-18). Even if she were able to perform some work activities, Burr argues, she could not have done so on a sustained basis. (*Id.* at pp. 18-19). Burr asserts that the ALJ did not provide substantial evidence to support his determination that she did not meet a listing, and, as there was no logical and accurate bridge between the evidence and the result, the case should be remanded for further consideration. (*Id.* at pp. 19-21).

The Commissioner responds that that Burr bears the burden of showing that her impairments met or equaled a listed impairment, and that onus requires her to be precise in meeting or equaling each of the listing's requirements. (ECF Doc. 10,  p. 14). Despite the burden falling on Burr, the Commissioner argues that the ALJ provided substantial evidence to support his finding of no more than moderate limitations. (*Id.* at p. 15). The Commissioner adds that in a previous argument, Burr asked this Court to find error in the ALJ's finding that APN Zehe's opinion was unpersuasive, but notes that APN Zehe's opinion found either no limitation or limited, but not precluded, when considering all areas of social interaction. (*Id.*). Further, the Commissioner contends that Burr offered no evidence to overcome her burden with regard to the domain of concentration, persistence, and maintaining pace. (*Id.* at p. 16).

At Step Three, the clamant has the burden to show an impairment that meets or medically equals all of the criteria of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Rabbers v. Comm'r of SSA*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing."). The ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). But the ALJ does not have to discuss a listing that the claimant clearly has not met. *Sheeks v. Comm'r of SSA*, 544 F. App'x 639, 641 (6th Cir. 2013). And if the claimant did not raise a "substantial question" as to whether a listing was met – *i.e.*, point to specific evidence that demonstrates a reasonable possibility that an impairment or combination of impairments met or medically equaled the criteria of a listing – the ALJ's failure to evaluate that listing is not reversible error. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014) citing *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990); *Sheeks*, 544 F. App'x at 641-42). If an impairment meets or medically equals the criteria of a listed impairment, the claimant is conclusively disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 416.920(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

To meet a Listing's severity level for either of 12.04, 12.06, or 12.15, Burr must show that she meets: (1) the impairment-specific medical criteria in Paragraph A; and (2) the functional limitations criteria in Paragraphs B or C. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§§§ 12.00(A), 12.04, 12.06, and 12.15. To meet Paragraph B for any of the Listings in question, the claimant must show that his affective disorder resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself." 20 C.F.R. pt. 404, Subpt. P, App. 1 §§§ 12.04(B), 12.06(B), 12.15(B). To meet the criteria for Paragraph C, a claimant must show that he had a:

> Medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder; and (2) marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.

20 C.F.R. pt. 404, Subpt. P, App. 1 §§§ 12.04(C), 12.06(B), 12.15(B). In addressing the Paragraph B domains in the present case the ALJ determined that Burr had no limitations in understanding, remembering, or applying information; mild limitation in adapting and managing oneself; and moderate limitations interacting with others and concentrating, persisting, and maintaining pace. (Tr. 22-23). He further determined that the evidence failed to establish the

22

presence of the Paragraph C criteria. (Tr. 23). In support of his finding regarding interacting with others and concentrating, persisting, and maintaining pace, the ALJ wrote:

> In interacting with others, the claimant has a moderate limitation. At the hearing, the claimant testified that they do not leave their house. When they do, they need to be accompanied by their case manager. They also testified that when they leave the house, they have panic attacks (hearing testimony). In an Adult Function Report, the claimant indicated that their conditions "limit [their] ability to maintain positive interpersonal relationships" (B4E/3). They suffer from agoraphobia and anxiety, which affects their ability to be outside and around people (B4E/3). The claimant reported that they interact with others mainly over social medial and text messaging (B4E/7). They denied going to places on a regular basis, stating instead that they do not go anywhere (B4E/7). They explained that their mental health limits their ability to make any meaningful connection with others (B4E/7). Additionally, the claimant testified that they have excessive fears of authority and rage from others (B4E/8). Review of the medical record shows that the claimant had a hard time leaving their home (B5F; B8F; B9F). The claimant was treated
> consistently for agoraphobia for many years (B3F; B5F; B8F; B9F). However, counselling records also show that the claimant was occasionally able to interact with friends (B8F; B9F). In early 2024, the claimant discussed going to a rock concert with their friend in another state (B9F). Considering the totality of the evidence, the undersigned finds that the claimant would have moderate limitations in this area.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. At the hearing, the claimant testified that they cannot focus very long. They estimated that they can only focus for 20 - 30 minutes (hearing testimony). In an Adult Function Report, the claimant indicated that their conditions affect their ability to complete tasks and concentrate (B4E/8). When asked how long they can pay attention, the claimant responded 20 minutes (B4E/8). The claimant also reported that they do not handle stress or changes in their routine well (B4E/9). They explained that they live in a constant state of stress and if changes in their routine do occur, they are affected for days (B4E/9). Review of the medical record shows that the claimant struggled significantly handling stress (B2F; B5F; B8F; B9F). The claimant spent almost every counselling session discussing their issues tolerating stress and changes in their routine (B2F; B5F; B8F; B9F). One such incident occurred in early 2024, where the claimant discussed their problems trying to do a social activity with friends due to stress and changes (B9F/38). While the claimant did not have difficulty with concentration, they struggled significantly with persistence (B2F; B5F; B8F; B9F). Considering the totality of the

> evidence, the undersigned finds that the claimant would have moderate
> limitations in this area.

(Tr. 22-23).

Burr argues that the ALJ erred in evaluating the Paragraph B domains, specifically interacting with others and concentrating, persisting, and maintaining pace, by finding no more than moderate limitations. (ECF Doc. 8, pp. 16-21). Further, Burr points to examples in the record that she suggests gives rise to the notion that the ALJ should have found marked limitations in these two domains. (*Id.* at pp. 17-18). The ALJ, however, clearly relied on Burr's own statements in reaching his conclusion, noting that her Adult Function Report showed she was able to interact with others over social media and text, and that examination notes showed she was able to occasionally interact with friends, and she was discussing going out of state to attend a rock concert. (Tr. 22). Further, the ALJ wrote that examination notes showed that Burr did not have difficulty with concentration, but because she did struggle significantly with persistence, the ALJ found only moderate limitations in that domain. (Tr. 23).

Because this constitutes substantial evidence to support the ALJ's findings that Burr did not satisfy the Paragraph B criteria, and Burr makes no argument in support of error in the ALJ's evaluation of Paragraph C criteria, this Court will not disrupt the ALJ's decision. *See Nash v. Comm'r of Soc. Sec.* No. 19-6321, 2020 WL 6882255 at *4 (6th Cir., Aug. 10, 2020). ("Even if the record could support an opposite conclusion, we defer to the ALJ's findings because it is supported by substantial evidence, based on the record as a whole.").  To do so would amount to reweighing the evidence which the Court does not do when reviewing an ALJ's decision. *McQuade v. Comm'r of Soc. Sec.*, No 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022). Rather the Court must defer to the ALJ's decision "even if there is substantial

evidence that would have supported an opposite conclusion[.]" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

**VII.**      **Conclusion**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Burr's application for SSI is hereby AFFIRMED.

Dated: January 6, 2026

Reuben J. Sheperd
United States Magistrate Judge